UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CEDAR FARM, HARRISON COUNTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-1230-DFH-JMS |
| | ) | |
| LOUISVILLE GAS AND ELECTRIC COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Cedar Farm Harrison County, Inc. and Louisville Gas and Electric Company (LG&E) entered into an Amended and Consolidated Oil, Gas and Gas Storage Lease. Cedar Farm filed this suit alleging that LG&E has breached the Lease repeatedly, causing damage to Cedar Farm's property. Count I of the Amended Complaint seeks damages. Count II seeks to evict LG&E from the property and to terminate or forfeit the Lease. LG&E has moved for partial summary judgment on Count II and asked that a separate final judgment be entered on Count II pursuant to Rule 54(b). As explained below, LG&E's motion for partial summary judgment on Count II is granted, but the court will not enter a separate final judgment under Rule 54(b).

I.      *Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "Where there are no genuine issues of material fact, contract interpretation is particularly well-suited for summary judgment." *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 952 (7th Cir. 2004) (reversing and remanding with instructions to enter summary judgment in favor of plaintiff on issue of Indiana contract law).

II.    *Undisputed Facts*

The court sets forth the facts in the light most favorable for Cedar Farm, the non-moving party. In 1996, Cedar Farm entered into the Lease with LG&E for the storage and extraction of oil and natural gas. Am. Complaint Ex. A. The Lease consolidated several oil and gas leases on the property dating back to 1947. Lease

at 15-16.  The 1996 Lease encumbers more than 2,000 acres of land owned by Cedar Farm in Harrison County, Indiana.  Lease at 2.  The 1996 Lease is to last "for as much longer as oil or gas is produced in paying quantities or as the Property continues to be used for the underground storage of gas."  Lease at 4.

In three different provisions, the Lease identifies three specific situations that could result in termination of the lease:

(1)    If oil and gas is not produced in paying quantities and the property no longer is used for underground storage.  *Id.*

(2)    If LG&E voluntarily cancels the Lease upon payment of $1.00.  Lease at 12.

(3)    If LG&E fails and refuses, for 30 days after receipt of written demand from Cedar Farm, to make rental and royalty payments.  Lease at 5.

The Lease also states:  "Lessee shall pay for damages caused by its operations."  Lease at 10.  The Lease includes a specific formula for calculating monetary damages for harm to the trees on Cedar Farm's property.  *Id.*

For purposes of summary judgment on Count II, the court assumes that LG&E took the following actions that caused damage to Cedar Farm's historically, architecturally, and environmentally significant property:  cut down trees unnecessarily in several locations, including classified tree areas, without proper notice; dumped construction and scrap materials on the property; installed tanks leaking unidentified fluids; built an unsightly shack that appears to serve no

-3-

purpose; and otherwise failed to carry out its activities in a workmanlike manner. Am. Complaint ¶¶ 14-18.

LG&E does not owe Cedar Farm any rental or royalty payments. Veroff Aff. at 2. LG&E has received no written notice from Cedar Farm of amounts past due. Bray Aff. at 1. Since 2000, LG&E has paid Cedar Farm more than $40,000 under the Lease. Veroff Aff. at 2.

III.   *Termination of the Lease Under Count II*

LG&E argues that it is entitled to partial summary judgment on Count II because it is current on its payments to Cedar Farm and because the Lease specifies that damages are the remedy for the alleged harm to the property, without providing for forfeiture or termination as a remedy for such breaches. Cedar Farm contends that the breaches have been so serious and numerous that it should be entitled to terminate the lease.

The Lease expressly allows termination by Cedar Farm if LG&E is delinquent in making payments. LG&E has offered uncontested evidence to show that it does not owe Cedar Farm any rental or royalty payments, and it has never received written notice from Cedar Farm of any delinquent payment. There is no genuine issue of fact on this issue. Cedar Farm has relied merely on its allegation of non-payment and has not set out any specific facts showing a genuine issue for

trial.  See Fed. R. Civ. P. 56(e)(2).  LG&E is entitled to summary judgment on this issue.

The principal legal dispute here is whether the parties' oil and gas lease allows Cedar Farm to terminate the lease rather than rely on only money damages as a remedy for breaches of terms governing LG&E's use of the property.  The issue is governed by Indiana law.

"Oil and gas leases or contracts are in a class by themselves. . . ."  *Risch v. Burch*, 95 N.E. 123, 126 (Ind. 1911) (stating that "ordinary rule that forfeitures are not favored does not apply with full force to them if at all" where lessee has failed to drill for oil or gas as required by lease); see also, *e.g.*, *New American Oil & Mining Co. v. Troyer*, 77 N.E. 739, 741 (Ind. 1906) (reversing trial court's order terminating lease for failure to drill soon enough:  "Such contracts are not ordinary leases nor within the purview of our statute concerning the relation of landlord and tenant."); *Moorer v. Bethlehem Baptist Church*, 130 So.2d 367, 371 (Ala. 1961) ("Gas and oil leases and contracts are a part by themselves.  There is scarcely any comparison between them and the ordinary farm or house lease. . . .").

Before the lessee has commenced drilling, courts will enforce forfeiture or termination clauses.  *E.g.*, *Risch,* 95 N.E. at 126-27; *Dill v. Fraze*, 79 N.E. 971, 973 (Ind. 1907).  Oil and gas have been described as "wandering and vagrant."

*Dill*, 79 N.E. at 973.  The lessor bears the risk that if the lessee does not drill, the oil and gas beneath the lessor's land could be captured by other property owners. Courts therefore enforce forfeiture provisions before drilling has begun so that a lessor can contract with someone else to drill and thus avoid permanent loss of the economic value of the oil and gas beneath its land.

After the lessee produces oil or gas, however, it acquires an interest in the land.  Courts are far more reluctant to enforce even explicit forfeiture provisions, let alone to imply rights of forfeiture, at least if damages can adequately compensate the lessor.  *E.g.*, *Barrett v. Dorr*, 212 N.E.2d 29, 35 (Ind.  App. 1965) (affirming denial of termination and quoting treatise for proposition that "Most courts have adhered rather closely to the rule that forfeitures will not be enforced unless expressly created and have construed the language of the leases purporting to create powers of forfeiture strictly."); *Rembarger v. Losch*, 118 N.E. 831, 833 (Ind. App. 1918) (reversing termination of producing lease where damages would adequately compensate for breaches).  Once production begins, the lessee bears the risk that the lessor will use any opportunity to try to terminate or forfeit the lease to capture more of the value of the oil and gas.  To terminate a producing lease, a lessor must show that damages will not suffice as a remedy.  *Id.*

The Lease here incorporates the distinction between pre- and post-production of oil and gas.  Lessor Cedar Farm could more easily have terminated the Lease before oil and gas production began.  Lessee LG&E can more easily

terminate the Lease after oil and gas production began.  The Lease provides expressly for termination under three circumstances.  First, LG&E has the right to cancel and surrender the Lease at any time, though it presumably has little incentive to do so while the production of oil and gas continues.  Lease at 12.  Second, Cedar Farm can terminate the lease if oil or gas is not produced in paying quantities and the land is not used for storage.  Lease at 4.  Third, Cedar Farm can terminate the Lease for non-payment (after notice and an opportunity to cure) even after the production of oil and gas has commenced.  Lease at 5.  The Lease provides that LG&E shall pay for damages to Cedar Farm's property.  Lease at 10.

The Lease has no apparent ambiguity as applied to the current case and should be interpreted within its four corners.  See *New Harmony Realty Corp. v. Superior Oil Co.*, 31 N.E.2d 673, 677 (Ind. App. 1941).  A court will not look to a secret intent but to the outward manifestation of intent.  *Crabtree v. Lee*, 469 N.E.2d 476, 479 (Ind. App. 1984).  The provisions for termination and damages show that the parties contemplated termination as a potential remedy when they signed the Lease.  They did not provide for termination based on disagreements about LG&E's treatment of the land.  Without express provision for termination, Cedar Farm would need to show that an award of money damages would not be adequate to compensate it for harm to its property in breach of the Lease terms.  *Rembarger*, 118 N.E. at 833-34 (reversing judgment terminating a producing lease where lessor had not shown that money damages could not adequately compensate for losses).

Cedar Farm argues that because the Lease did not expressly foreclose the option of termination as a remedy, it should be an available remedy for any breach, or at least for the breaches it alleges. Cedar Farm cites *Four Seasons Manufacturing, Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 503 (Ind. App. 2007), to argue that the Lease's silence means that termination is an available remedy. The lease in *Four Seasons* was for commercial property. The tenant had fallen behind on its rent and then vacated the premises. The lease provided expressly for termination or forfeiture, specifying that if the lessee defaulted on payment, the lessee would deliver possession of the property to the lessor. *Id.* at 502. The trial court found, and the appeals court affirmed, that in the absence of a provision barring other remedies, damages were also an appropriate remedy for a breach of the lease. *Id.* at 503.

*Four Seasons* does not help Cedar Farm in this case for two reasons. First, *Four Seasons* involved a traditional lease of building space and is not directly applicable to an oil and gas lease. See, *e.g.*, *Risch*, 95 N.E. at 126 (recognizing special character of oil and gas leases). Second, the tenant in *Four Seasons* had already vacated the building. The court was not forfeiting a lease and did not address the allocation of economic risks and rewards applicable to termination of any lease, let alone a producing oil and gas lease. 870 N.E.2d at 499. *Four Seasons* thus does not teach that the remedy of termination or forfeiture can be implied in an oil and gas lease that specifically provides for damages as the remedy for harm to the property. Cf. *Dittman v. Keller*, 104 N.E. 40, 41 (Ind. App.

1914) (enforcing *express* provision for termination or forfeiture of producing lease if lessor ceased operations for more than 60 days).

Cedar Farm argues that if forfeiture is not a potential remedy in all disputes, then LG&E could repeatedly and materially violate the lease, and Cedar Farm's only remedy would be to sue repeatedly for damages.  Pl. Br. 9.  At least one court has granted forfeiture of a producing oil and gas lease where there was not an express forfeiture provision, but that case is easily distinguishable.  In *Thurner v. Kaufman*, 699 P.2d 435, 438-41 (Kan. 1984), the Kansas Supreme Court affirmed termination of a producing an oil and gas lease that did not contain an express termination provision where the lessee had "flagrantly violated" restrictions on its use of the surface and had denied the lessors the use of the surface rights they had retained."  *Id*. at 439.  In *Thurner*, the lessee's violations were flagrant and included:  once per week draining a 100 barrel tank of salt water and oil onto the land; repeatedly leaving a gate open, which allowed some of 80 cows and 80 calves to escape repeatedly; not fencing off an oil well; not fencing off a major oil spill; not fencing off a valve that allowed 30 cows and many calves to be covered with oil; operating in a manner such that 18 cows showed signs of consuming extensive oil (the cows  who consumed the oil were not be able to breed the next season); and allowing a second major oil spill, where oil traveled at least 600 feet and went into a pond.  *Id*. at 440.  One powerful fact in *Thurner* was that many of these violations occurred after a court had issued an order

allowing the lessee to continue operations under the protection of that court order. *Id.* at 441.

The court assumes that Indiana courts might follow *Thurner* on similarly extreme facts, but the breaches alleged by Cedar Farm are not so comparable as to justify the extreme remedy of implying a right of forfeiture of this producing oil and gas lease. For purposes of summary judgment, the court assumes that LG&E has cut down trees unnecessarily in a protected forest area, dumped or permitted others to dump scrap materials on the property, installed a leaky storage tank, and otherwise failed to perform in a workmanlike manner. Am. Complaint ¶¶ 14-18. Cedar Farm has not alleged the kind of willful, wanton, and repeated breaches of lease conditions that might persuade the Indiana courts to follow the Kansas court's lead in *Thurner*. It is hard to imagine how an oil and gas lease could be effectuated without some harm to the surface land, and Cedar Farm and LG&E agreed in the Lease that damages would be the remedy for such harm.

To avoid summary judgment on the remedy of termination, Cedar Farm needed to come forward with evidence that would allow a reasonable trier of fact to conclude that damages would not compensate it adequately for the harm to its property. See *Barrett*, 212 N.E.2d at 35; *Rembarger*, 118 N.E. at 833. It has not done so. In the future, perhaps, there could be some sort of harm done where forfeiture would be appropriate, but today is not that day. Even when the record is viewed in the light reasonably most favorable to plaintiff Cedar Farm, there is

no genuine issue of material fact that would allow the Lease to be terminated or forfeited.  Partial summary judgment is granted for LG&E on Count II.

IV.    *Rule 54(b)*

LG&E requests entry of a separate final and appealable judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  The court denies this request.

When a case presents more than one claim for relief, Rule 54(b) allows a district court to "direct entry of a final judgment as to one or more . . .  claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).  A court must make two decisions when ruling on a Rule 54(b) motion.  First, the court must decide "if the claims are legally distinct and involve at least some separate facts. . . ."  *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1368 (7th Cir. 1990).  Next, the court must decide whether there is just cause for delay in entering judgment.  The relevant factors often include (1) the possibility that the need for review might be mooted by future developments in the district court and (2) the possibility that the appellate court may be obliged to consider the same issue a second time.  *Stearns v. Consolidated Mgmt. Inc.*, 747 F.2d 1105, 1109 (7th Cir. 1984) (affirming certification of Rule 54(b) judgment on plaintiff's age discrimination claim while sex discrimination claim remained pending in district court, but reversing on merits).

When deciding a Rule 54(b) question, the court must determine if there are separable claims.  "Similarly, when plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and subdivision (b) does not apply."  10 Charles Alan Wright, Arthur R. Miller &  Mary Kay Kane, Federal Practice and Procedure § 2657 (3d ed. 1998); *Lottie v. West American Ins. Co.*, 408 F.3d 935, 939 (7th Cir. 2005) (reversing Rule 54(b) certification on insured's claims for bad faith claim denial and race discrimination, while breach of contract claim remained pending).  Cedar Farm's two counts rely on one set of facts and merely request two different forms of relief.  To have separate claims means "having minimal factual overlap."  *Continental Casualty Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 516 (7th Cir. 1999) (collecting cases); accord, *e.g.*, *Minority Police Officers Ass'n of South Bend v. City of South Bend*, 721 F.2d 197, 201 (7th Cir. 1983) (affirming in part and reversing in part a Rule 54(b) certification).  Yet this is the extreme case in which there is complete factual overlap.  Count II of the Amended Complaint adds no new factual allegations at all, only a new request for a different form of relief.  In this case, granting the Rule 54(b) motion would be an abuse of discretion because there are two forms of relief sought based on the same set of facts.

The court also could not make the required finding of no just cause for delay.  Further developments in the district court could moot appellate review.  If the court finds that LG&E did not breach the Lease, then Cedar Farm could not prevail on either Count I or Count II.  In that event, everything done in an initial

appeal on Count II would have amounted to wasted words.  That prospect weighs
heavily against granting the Rule 54(b) motion.  See *Factory Mutual Ins. Co. v.
Bobst Group USA, Inc.*, 392 F.3d 922, 924 (7th Cir. 2004) (reversing Rule 54(b)
certification on counterclaim for contribution that depended on resolution of
original claim that remained pending in district court).  Similarly, if Counts I and
II were appealed separately, the appellate court would need to relearn the same
facts a second time.  That prospect also weighs heavily against a Rule 54(b)
certification here.  See *Continental Casualty Co.*, 189 F.3d at 518.


*Conclusion*


The undisputed facts show that a reasonable fact finder could not find for
Cedar Farm on Count II.  Forfeiture or termination of this producing oil and gas
lease is not an available remedy for the alleged breaches if damages will provide
adequate compensation for alleged harm to the lessor's property.  Cedar Farm has
not come forward with evidence tending to show that damages would not suffice.
Accordingly, LG&E's motion for partial summary judgment is granted.  LG&E's
motion for entry of final judgment pursuant to Rule 54(b) is denied.  The court
trial remains scheduled for August 24, 2009.


So ordered.

Date:  June 30, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court

Southern District of Indiana

Copies to:

Jan M. Carroll
BARNES & THORNBURG LLP
jan.carroll@btlaw.com

Jackie M. Bennett Jr.
TAFT STETTINUS & HOLLISTER LLP
jbennett@taftlaw.com

F. Anthony Paganelli
TAFT STETTINUS & HOLLISTER LLP
paganelli@taftlaw.com